# Armstrong, Admr'x *v.* Montgomery Street Railway Co.

*Action against a Street Railway Company by Administratrix to recover Damages for Alleged Negligent Killing of her Intestate.*

1. *Action by administratrix to recover damages for negligent killing of intestate; sufficiency of complaint.*—In an action against a street railway company by an administratrix, to recover damages for the alleged negligent killing of her intestate, a count of the complaint which, after averring that the defendant operated a street railroad, and that the plaintiff's intestate was a passenger on one of the defendant's street cars, then further avers that "said defendant then and there so negligently conducted said business that by reason of such negligence plaintiff's intestate, who was a passenger on one of defendant's street cars, received personal injuries which caused his death," sufficiently avers a cause of action for the negligence of the defendant, and is not demurrable on account of the generality of its averments of negligence.

2. *Same; same.*—In such an action, a count of the complaint which avers that the plaintiff's intestate gave the usual signals to stop the cars, whereupon the motorman * * * slowed up and stopped, or so nearly so as to render it reasonably safe

[Armstrong, Admr'x. v. Montgomery Street Railway Co.]

for deceased to proceed to alight, whereupon the deceased proceeded to alight, placing himself in a standing position on the platform or running board alongside the car for that purpose, * * * whereupon the said motorman negligently failing to look and see whether deceased was in a place of danger, negligently * * * started the car with a sudden motion; deceased then called out and warned said motorman that he was not off yet; but knowing, or having good reason to know, of deceased's danger, said motorman negligently caused said car to take a second and violent motion forward on a down grade, thereby throwing deceased violently from said car and inflicting personal injuries which caused his death," sufficiently states a cause of action, and is not subject to demurrer, on the ground that it does not show whether plaintiff's intestate was injured by reason of attempting to get off the car after it had stopped or while it was in motion, and that it does not show that the motorman was informed of his desire to get off.

3. *Same; same; action against railroad company by passenger for injuries; not necessary for complaint to allege the name of the negligent employe.*—In an action against a railroad company as a common carrier, to recover damages for personal injuries to a passenger, it is not necessary for plaintiff in his complaint to aver the name of the defendant's employé whose negligence was alleged to have caused the injuries complained of.

4. *Same; same.*—In an action against a street railway company to recover damages for personal injuries to a passenger, where a count of the complaint alleges that on the day the injuries complained of were inflicted, the defendant, while engaged in operating an electric street railway as a common carrier for passengers in the city of Montgomery, "negligently failed to employ a conductor to aid in operating one of the street cars on which plaintiff's intestate was, at the time, a passenger," but negligently operated said car by a motorman alone, having employed a certain designated person, who was not a skillful person for the discharge of such duties, to operate said street car as motorman, that said person negligently operated and conducted said car, and "by reason of which several negligent acts and omissions on the part of the defendant, its agents and employés plaintiff's intestate on said date received personal injuries from which he came to his death," such count charges that each one of the acts and omissions therein stated was negligent and that they all combined together to produce the result complained of; and it is, therefore, improper for the court on motion of the defendant, to strike out the portion

[Armstrong, Adm'x. v. Montgomery Street Railway Company.]

of the count quoted, alleging negligence on the part of the defendant in failing to employ a conductor.

5. *Same; sufficiency of plea.*—In an action against a street railway company by an administratrix, to recover damages for the alleged negligent killing of her intestate, the averment in a plea setting up the contributory negligence of the plaintiff's intestate, in trying to alight from the car while in motion, that at the time of the injury the car upon which the plaintiff's intestate was riding, was equipped with a bell and cord attached, so that passengers could notify the motorman that they wished the car stopped, without the further averment that the plaintiff's intestate *did not* pull the cord and ring the bell, presents no defense to the action, and should, upon motion, be stricken from the file.

6. *Action against street railway company; contributory negligence in violation of rule; plea must aver knowledge of rule.*—While a rule of a street railway company that passengers must not leave its cars while they are in motion, is a reasonable rule, a passenger can not be charged with the non-observance of such rule, unless he knows it; and therefore, in an action against a street railway company for personal injuries to a passenger, a plea which sets up the non-observance of such rule, as contributory negligence, but which fails to aver that the person injured had knowledge of the rule alleged to have been so violated, is insufficient and demurrable.

7. *Same; when contributory negligence a question for the jury.*—In an action against a street railway company by an administratrix, to recover for the alleged negligent killing of plaintiff's intestate, where it is shown that the plaintiff's intestate was a passenger on one of the cars of the defendant, and on approaching his destination he rung the bell to notify the motorman to stop the car and that as the car began to slow up he got upon the running board along the side of the car, preparatory to alighting therefrom, and while standing on the running board there was a sudden jerk of the car, which threw the plaintiff's intestate off, causing the injuries which resulted in his death, the question as to whether or not the plaintiff's intestate was guilty of negligence in getting upon the running board is a question for the jury to be determined from the evidence.

8. *Same; responsibility for damages resulting therefrom.*—A person guilty of negligence is responsible for all consequences which prudent and experienced men, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind.

9. *Same; same; when death proximate cause of injury.*—In an action against a street railway company to recover damages

for the alleged negligent killing of a passenger, where it is shown that as a result of the alleged negligence of the defendant, the passenger fell from defendant's car and in the fall his fingers were crushed and mashed and that the injuries so sustained produced blood poisoning, and that from the effects of the blood poisoning he died, the death is, by such evidence, shown to have been the proximate result of the injuries sustained; and in the absence of contributory negligence on the part of the plaintiff or other valid defense, the railroad company would be liable.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. J. C. RICHARDSON.

This action was brought by the appellant, L. J. Armstrong, as administratrix of the estate of Charles Armstrong, deceased, against the appellee, to recover damages for personal injuries alleged to have been inflicted on plaintiff's intestate, by reason of the negligence of the defendant or its employés, and which resulted in the death of plaintiff's intestate.

The complaint as originally filed, contained six counts. It was subsequently amended by the addition of the 6th, 7th, 8th, 9th, 10th, 11th and 12th counts. Demurrers were overruled to the 2d, 3d, 4th, 5th, 7th, 8th, 9th, 10th, 11th and 12th counts, and it is, therefore, unnecessary to set out these counts at length :

The 1st and 6th counts were in words and figures as follows: "1. The plaintiff, L. J. Armstrong, suing as administratrix of the estate of Charles Armstrong, deceased, claims of the defendant, Montgomery Street Railway, a corporation organized under the laws of the State of Alabama, the sum of thirty thousand dollars as damages for this : That on to-wit, the 25th day of May, 1898, the defendant engaged in operating by electric force a street railway as a common carrier of passengers in and upon the streets of the city of Montgomery, in the State of Alabama, and said defendant then and there so negligently conducted said business that by reason of such negligence plaintiff's intestate, who was a passenger on one of defendant's street cars, received personal injuries which caused his death."

"6. The said plaintiff claims of the said defendant the sum of thirty thousand dollars as damages for this : That

on, to-wit, the 25th day of May, 1898, plaintiff's intestate was a passenger on an electric street car which was being operated by the defendant in the city of Montgomery, in the State of Alabama; that at the proper distance from the point of his destination, deceased gave the usual sig-nal to stop the car, whereupon the motorman operating the car as the servant of the defendant slowed up the car and stopped, or so nearly so as to render it reasonably safe for deceased to proceed to alight, whereupon deceased proceeded to alight, placing himself in a standing position on the platform or running board alongside the car for that purpose; at that moment a passenger on the car told the motorman that she, the said passenger, did not want to get off at that point, whereupon the said motorman, negligently failing to look and see whether deceased was in a place of danger, negligently applied the force and started the car with a sudden motion; deceased then called out and warned said motorman that he was not off yet; but, knowing or having good reason to know of deceased's danger, said motorman negligently caused said car to take a second and violent motion forward on a down grade, thereby throwing deceased violently from said car and inflicting personal injuries which caused his death."

To the 1st count, the defendant demurred upon the following grounds: "1. Because the facts are not stated showing the defendant's negligence in conducting its business, as a result of which the injury to plaintiff's intestate was produced. 2. Said count fails to state the facts showing how, where or in what manner the defendant was negligent, and as a result of which negligence, the plaintiff's intestate was injured. 3. Said count of the complaint fails to state the name of the person or agent or employé of defendant, alleged to have been guilty of negligence by reason of which the plaintiff's intestate is alleged to have received the injury complained of, or that the name of such agent or employé was unknown to plaintiff."

To the 6th count, the defendant demurred upon the following grounds: "1. Because it is not shown by said complaint whether plaintiff's intestate was injured by reason of attempting to get off the car after it had been

[Armstrong, Admr'x. v. Montgomery Street Railway Co.]

stopped, or whether he attempted to get off while the car was moving, and before the same had stopped, and thereby received the injury complained of. 2. It is not shown by said count of the complaint that plaintiff's intestate informed defendant's motorman, J. C. Jolly, who was in charge of said car, that he desired to alight from or get off of said car, before attempting to get off of the same."

. These demurrers were sustained, and the plaintiff separately excepted to the sustaining of the demurrers to each count.

In each of the 4th and 5th counts, it was averred that defendant "negligently failed to employ a conductor to assist such motorman in operating defendant's street car by electric force." On motion of the defendant these averments were stricken from each of the counts, and to this ruling the plaintiff duly excepted.

The 12th count is set out in the opinion, and the ruling of the court in striking the averments therefrom is also shown in the opinion.

: The defendant pleaded the general issue and several special pleas. In the 3d plea it was averred that at the time of the injury complained of, the plaintiff's intestate was riding on one of the defendant's cars, which was open and uninclosed on the sides, and on which there was what is known as a running board on either side of said car, placed there for the purpose of passengers getting on and off said car; that while said car was in motion, the plaintiff's intestate got up from his seat, and without any necessity therefor, got on the running board outside of said car, and while standing thereon, he stepped off, jumped off or fell off of said car, and that by reason of plaintiff's said intestate getting out of said car on the running board while the car was in motion, and by reason of his stepping, jumping or falling off of said car while in motion, he fell down and said fall contributed proximately to the injury complained of, which was the result of defendant's own negligence; "and defendant avers that at the time of the injury complained of, the defendant's said car was provided with a bell with a cord affixed thereto for the use of passengers travelling on said car; and defendant avers that the said Armstrong, deceased, could by pulling said cord, have rung

the bell, and thereby notified defendant's motorman, who was at the time in charge of said car, operating it, to have stopped the same, and if the said Armstrong, deceased, had so rang said bell, and have remained in his seat until the said car was stopped by the said motorman, he could have gotten off of said car in safety, and thereby have avoided the accident or injury complained of."

In the 4th plea, the defendant averred "that just preceding the time of the injury complained of, the plaintiff's intestate, Charles Armstrong, deceased, was riding on defendant's car which was open or uninclosed on the sides, and that said car was provided with a bell for the use of passengers in riding on said car, and that there was a cord attached to said bell, so that by pulling said cord passengers could notify the motorman by ringing the bell that they desired to stop the car; and defendant avers that there was at the time posted in the car, on which said Armstrong, deceased, was riding, and preceding the time of the occurrence of the injury complained of, the rules of the defendant established for the government of the conduct of its passengers and printed in large letters and tacked up in said car, where said rules were open to view and were seen or could have been seen by the said Armstrong, deceased, by the use of ordinary prudence or care; and defendant avers that the said rules were reasonable in the requirements therein contained of passengers, while riding on defendant's car." There is then set out in said plea the rules referred to, which prohibited passengers from entering or leaving said car while in motion, and provides that the company shall not be responsible for injury resulting from direct violation of the rule. The said plea then continues as follows: "And defendant avers that the plaintiff's intestate violated said rules, in that he did not remain inside the said car until it, the car, came to a full stop, and by leaving or attempting to leave the defendant's car while it was in motion, and defendant avers that by the violation of said rules of defendant, the plaintiff's intestate was guilty of negligence which proximately contributed to the injury complained of in that he got on the step on the outside of said car, before

it stopped, and he attempted to leave and did leave or get off defendant's car while it was in motion, and running at a rate of speed of, to-wit, four or five miles per hour, and plaintiff's intestate fell, and the injury complained of was inflicted by reason of said fall and was the proximate result of the action and conduct of plaintiff's intestate in violating defendant's rules as aforesaid, which were posted in said car, and in attempting to get off, or getting off said car while the same was running and in motion, and without waiting for the car to stop before getting out of or off of said car."

The plaintiff moved to strike from the defendant's said 3d plea, the portion thereof which is quoted above, upon the ground that it was not averred that the plaintiff's intestate did not ring the bell as a signal for the motorman to stop the car, and that his failure to do so contributed proximately to the injury complained of. This motion was overruled, and the plaintiff duly excepted.

The plaintiff then demurred to the 3d plea upon the following grounds: "1. Because the facts set up therein in the alternative do not show any negligence on the part of plaintiff's intestate proximately contributing to his injury. 2d. Because the only matter set up in said plea is the alleged fact that the deceased stepped upon the running board of the car before it came to a stop, and no facts are set forth showing that such alleged act was negligence on the part of the deceased."

To the 4th plea, the plaintiff demurred upon the following grounds: "1. Because it is not shown that the act of the deceased in leaving the car and getting on the platform or running board was negligence on his part which proximately contributed to the injury complained of. 2. It is not shown that passengers were required or expected by the defendant or those in charge of the car, to obey or observe the rules set out in said plea. 3. It is not shown by any facts stated in the said plea, wherein the deceased was negligent in not observing said rules."

Each of these demurrers were overruled and the plaintiff separately excepted. To the 4th plea the plaintiff filed the following replication: "The rules set forth therein were not enforced or required to be observed by passengers, nor by the deceased, but on the contrary pas-

sengers were accustomed with the knowledge and consent of defendant to proceed to get up on the platform or running board of the car preparing to alight as the car slowed up; plaintiff's intestate knew that it was customary to proceed to alight by getting on the running board, while the cars were slowing up, and did so without objection, and with the knowledge and consent of defendant."

To this replication the defendant demurred upon the following grounds: 1. That said replication fails to show what person, officer or officers of the defendant company knew of and consented for plaintiff's intestate to go on the running board of the car preparatory to alight as the car slowed up. 2. Because said replication only answers a part of the fourth plea and not the whole of it. This demurrer was sustained, and the plaintiff duly excepted.

Upon issue being joined upon the pleadings, the plaintiff introduced evidence tending to show that the plaintiff's intestate while riding as a passenger on one of the defendant's cars, and while the car was approaching the point of his destination, he rung the bell as a signal for the motorman to stop, and that as the car slowed up, approaching the street crossing, where the intestate expected to alight, the said intestate left the car and stood upon the running board, and that as the plaintiff's intestate tried to alight from the car, it was started with a sudden jerk, which threw the intestate down near the track, and he sustained the injuries complained of, by reason of being so thrown near the track; the fingers of one of his hands being severely mashed and lacerated. The evidence of the physician who attended the plaintiff's intestate is stated in the opinion. The defendant introduced no evidence, and upon the introduction of the plaintiff's evidence the court, at the request of the defendant, gave the general affirmative charge in its behalf. To the giving of this charge the plaintiff duly excepted.

There were verdict- and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

16

[Armstrong, Admr'x. v. Montgomery Street Railway Co.]

MARTIN & BOULDIN, for appellant.—The first and second counts of the complaint, to which the court sustained a demurrer, were, under numerous decisions of this court, entirely sufficient.—*G. P. R. Co. v. Davis*, 92 Ala. 300, and authorities there cited; *Mary Lee C. & R. Co. v. Chambliss*, 97 Ala. 171; *K. C. M. & B. R. R. Co. v. Sanders*, 98 Ala. 293; *Stanton v. L. & N. R. R. Co.*, 91 Ala. 382; *Ensley Ry. v. Chewning*, 93 Ala. 24; *M. & O. R. R. Co. v. George*, 94 Ala. 199; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160; *Laughran v. Brewer*, 113 Ala. 509; *B'ham Ry. & Elec. Co. v. City Stable Co.*, 119 Ala. 615; *So. Ry. Co. v. Prather*, 119 Ala. 588.

2. The motion of plaintiff below, appellant here, to strike out certain parts of defendant's plea No. 3, should have been sustained. The matter to which the motion was directed presented no material issue. And the motion to strike having been overruled, plaintiff's demurrer to said plea No. 3 should have been sustained. Construed most strongly against the pleader, the plea presented no defense to the action. Everything which it sets forth might have been true and yet the defendant may have been guilty of negligence, simple or willful.

Defendant's plea No. 4 clearly presented no defense to the action, as the authorities hereinafter cited show and the circuit court should have sustained plaintiff's demurrer to said plea; and failing to do that, should have overruled defendant's demurrer to plaintiff's replication to said plea.—*Watkins v. B'ham Ry. & Elec. Co.*, 120 Ala. 147.

3. The remaining assignments of error relate to the action of the court in giving the general charge for the defendant and refusing it to the plaintiff. The circuit court, in holding that the conduct of plaintiff's intestate was, as matter of law, *per se* negligent, ran counter to the law as it is clearly established by adjudications of this and other states. Making preparations to alight by going on the platform or running board while the car is slowing up in response to signal to stop the car, is not, as matter of law, negligence precluding a recovery, even in an action for simple negligence.—*Watkins v. B'ham Ry. & Elec. Co.*, 120 Ala. 147, and cases cited; Booth on St. Rys., § 345; *N. B'ham St. Ry. v. Calderwood*, 89 Ala.

[Armstrong, Admr'x. v. Montgomery Street Railway Co.]

247; *Cen. R. R. & B. Co. v. Miles,* 88 Ala: 262; *Bourque v. N. O. City & Lake R. Co.,* (La.), 24 So. Rep. 780; *Medler v. Atlantic Ave. R. Co.,* 12 N. Y. Sup. 930, s. c. 126 N. Y. 669; *Bir. R. & E. Co. v. James,* 121 Ala. 120.

It was the duty of the motorman to see and know that no one was in the act of alighting from the car before moving.—*Highland Ave. & Belt R. R. Co. v. Burt,* 92 Ala. 291; *Birmingham Union Ry. Co. v. Smith,* 90 Ala. 60; *Bowie v. Greenville St. Ry. Co.,* (Miss.) 10 So. 574, and cases cited in last preceding paragraph.

4. The evidence tending to show that plaintiff's intestate was injured by the negligence of defendant's servant, and that the wound produced blood poisoning which caused his death, it was for the jury to say whether the death was a proximate result of the injuries. The circuit court committed a grave error in assuming to decide that question for the jury. If the injury contributes to or accelerates the death, the wrong-doer is liable. "It is not permitted to the offender to apportion his wrong."—*Tidwell v. State,* 70 Ala. 33; *L. & N. R. R. Co. v. Jones,* 83 Ala. 376; *Thompson v. L. & N. R. R. Co.,* 91 Ala. 496; *McDaniel v. State,* 76 Ala. 6; *Bowles v. State,* 58 Ala. 335; *McAllister v. State,* 17 Ala. 434; *Parsons v. State,* 21 Ala. 300; *Daughdrill v. State,* 113 Ala. 7, 34; *E. T. V. & G. R. Co. v. Lockhart,* 79 Ala. 315; 19 Am. & Eng. Encyc. of Law, p. 302, and citations in notes; 1st Sher. & Redf. on Neg., §§ 26, 28, 31 and notes; *Henley v. N. Y. & Brooklyn etc. Co.,* 1 Am. Neg. Rep. 324; *Gaven v. City of Troy,* 2 Am. Neg. Rep. 223; *Sauter v. R. R. Co.,* 66 N. Y. 50; *Sullivan v. Tioga R. Co.,* 112 N. Y. 643; *Pallett v. Long,* 56 N. Y. 200; *Ehrgott v. Mayor etc.,* 96 N. Y. 264.

ROQUEMORE & HARMON, *contra.*—The first count of the complaint stated no facts showing upon what the averments of negligence were based. The allegations of the complaint are statements of bare conclusions of the pleader and were too general to constitute a sufficient complaint.—*Ga. Pac. R. Co. v. Davis,* 92 Ala. 300; *Mary Lee C. & R. Co. v. Chambliss,* 97 Ala. 171; *K. C., M. & B. R. R. Co. v. Sanders,* 98 Ala. 293; *L. & N. R. R. Co. v. Jones,* 83 Ala. 376.

[Armstrong, Admr'x. v. Montgomery Street Railway Co.]

The demurrer to the 6th count of the complaint was properly sustained. It is said in this count of the complaint, "the servant of the defendant slowed up the car and stopped, or so nearly so," etc. It is not shown whether the car stopped or nearly stopped. A count in the alternative in a complaint is bad on demurrer.—*H. A. & B. R. R. Co. v. Dusenberry,* 94 Ala. 413, 418; *Kansas City, M. & B. R. R. Co. v. Burton,* 97 Ala. 249. The motion to strike certain portions of the defendant's third plea, and the demurrers to the 3d and 4th plea were properly overruled.—*McDonald v. Montgomery Street R. Co.,* 110 Ala. 161.

The general affirmative charge was properly given for the defendant.

McCLELLAN, C. J.—The first count avers that plaintiff's intestate was a passenger on one of defendant's street cars when he received the injuries which caused his death, and thereby shows the duty the defendant was under to conserve the safety of the intestate. This duty having been thus shown, the averment of a failure to perform it—of the negligence of defendant whereby the intestate came to his death—though very general—viz. : "Said defendant then and there so negligently conducted said business that by reason of such negligence plaintiff's intestate received personal injuries which caused his death"—was quite sufficient under the rule that has been long established, and has been many times reaffirmed in this court.—*Louisville & Nashville Railroad Co. v. Jones,* 83 Ala. 376; *Bessemer Land & Improvement Co. v. Campbell,* 121 Ala. 50, and authorities there cited; *Louisville & Nashville Railroad Co. v. Orr,* 121 Ala. 489; *Memphis & Charleston Railroad Co. v. Martin,* 117 Ala. 367, and cases there cited. The demurrer to this count for the generality of its averment of negligence should have been overruled.

The 6th count was equally free from the objections taken by the demurrer to it, and the court erred in holding it subject to them and bad.

It has been held that a complaint under certain clauses of the Employer's Liability Act should aver the name of the employe whose negligence is counted on,

or aver that his name is unknown to the plaintiff when that is a fact. This ruling was expressly predicated upon the consideration that the party injured would ordinarily have better opportunity than the common employer to know the name of the negligent employe under certain of the subdivisions of that act, as, for instance, where the injury was the result of compliance with orders under sub-division 3 of section 1749. But it has also been held that it is not necessary to aver the name of the alleged negligent employe when the injured party has not such better opportunity of knowing it, as, for instance under sub-division 1 of that section. *McNamara et al. v. Logan,* 100 Ala. 187; *Woodward Iron Co. v. Herndon,* 114 Ala. 191. Applying the same considerations to a passenger, the conclusion must be from his casual and temporary relations to the carrier's employes that he is not in a position to be better informed than the employer as to the name of an alleged negligent employe; and it has never been held or supposed, and is not the law that when he is injured through the negligence of an employe and sues to recover damages therefor he should aver the name of the employe or his ignorance of it.

One of the unnecessarily numerous counts in this complaint, the 12th, is as follows: "The plaintiff claims of the defendant the sum of thirty thousand dollars as damages for this: That on the 25th day of May, 1898, the defendant, engaged in operating by electric force a street railway, as a common carrier of passengers in the city of Montgomery, negligently failed to employ a conductor to aid in operating one of its street cars on which plaintiff's intestate was at the time a passenger, and negligently operated said car by a motorman alone; and negligently employed one J. C. Jolly, who was not a skillful person for such employment, as a motorman to operate said street car; said Jolly negligently operated and conducted said car; by reason of which several negligent acts and omissions on the part of the defendant, its agents and employes, plaintiff's intestate on said date received personal injuries from which he came to his death." On defendant's motion the court struck from this count the words "negligently failed to employ

a conductor to aid in operating one of its street cars on which plaintiff's intestate was at the time a passenger." This was error. We understand the count to charge that each one of the acts and omissions therein stated was a negligent act or omission, and that they all combined together and coalesced to produce the result complained of, each being laid conjunctively with the others and intestate's death being ascribed to the joint causation of them all. This is unnecessary particularity of averment, and by it the plaintiff took upon himself the heavy burden of showing that the injury resulted not from one or more of the negligent acts and omissions alleged, but from all of them operating together to the disaster complained of; but the count was not thereby rendered objectionable.—*Highland Avenue & Belt Railroad Co. v. Dusenberry*, 94 Ala. 413; *Kansas City, Memphis & Birmingham Railroad Co. v. Burton*, 97 Ala. 240, 249; *Louisville & Nashville Railroad Co. v. Mothershed*, 97 Ala. 261. And it cannot be said as matter of law that it was or was not negligent in the defendant to operate its street cars without conductors, or this car without a conductor. The count in question having averred that the failure to have a conductor on this car was negligence, the averment should have been allowed to remain in it, that evidence might be adduced upon it for the jury's consideration in determining, first, whether such failure was negligence, and, second, if it was, whether that negligence combined with the other alleged negligent acts and omissions to produce intestate's death.

It is not averred in the third plea that the intestate *did not* pull the cord and ring the bell therein spoken of, and no negligence is by the plea imputed to him in that connection. Of course, if he was not negligent in respect of these appliances the fact that the car was equipped with them is of no pertinency in the case as it was presented by the complaint at the time this plea was interposed; and plaintiff's motion to strike these averments from the plea should have been granted. It may be that these facts would have been evidentially competent under the plea of not guilty to the 12th count had the averment in that count of the negligent

failure of the defendant to have a conductor on that car not been stricken out of that count, as tending to show that the appliances of the car were such as that it was unnecessary to the safety of passengers to have a conductor; but surely the passenger cannot be held to have been guilty of contributory negligence upon the mere fact of the presence of the cord and bell. And what is here said applies to like averments in plea 4.

A rule of the street railway company that passengers must not leave its cars while they are in motion is a reasonable rule; but a passenger cannot be charged with negligence for its non-observance unless he knew of it, though conduct in violation of the rule may be negligent without reference to it. Plea 4 bases a charge of negligence against intestate upon the violation of this rule without regard to whether the violative act would have been a negligent act in the absence of the rule, and it does not aver that he knew of the rule. The plea was therefore bad.—*Brown, Admr. v. Louisville & Nashville Railroad Co.*, 111 Ala. 275. Had the plea averred intestate's knowledge of the rule, its further averments as to appliances for use of passengers in stopping cars might have been proper as going to show the reasonableness of the rule.

It is unnecessary to review the court's ruling on the demurrer to the replication to plea 4.

Whether the intestate was guilty of negligence in getting upon the running board, preparatory to alighting, while the car was in motion was a question for the jury.—*Watkins v. Birmingham Railway & Electric Co.*, 120 Ala. 147; 24 So. Rep. 392, and cases there cited; *Birmingham Railway & Electric Co. v. James*, 121 Ala. 120.

As to the intestate's injuries and death the testimony, given by the physician who attended him, was as follows: "On examination I found that he had an injury to the middle and ring fingers of the right hand; that the first joint on each finger had been crushed, lacerated, and he complained to be suffering a great deal of pain, and seemed to be suffering somewhat from shock. There was also a slight wound on the scalp. It was a cut about two inches long, had bled some, and the blood

had trickeled down the side of the head on his neck. I examined the wound on his head and found that it was simply a scalp wound, there was no injury to the bone, and I proceeded to examine his hand and found that the first joint of the first and ring fingers had been fractured and the soft tissues, skin and tendons, etc., had been much lacerated; that is, the skin torn up and some of the soft parts protruding. It was night. I had a kerosene lamp. I decided to dress the wounds antiseptically. I got some hot water, some carbolic acid, carbolized solution of the ordinary strength, and washed the wounds very thoroughly—they had been ground in sand. I cleaned the wounds off and trimmed the ragged edges so as to bring the skin back, to bring the wound together as best I could. Mr. Armstrong [the intestate] complained also of being injured internally, in his stomach. Of course, I had to take his word for that. There was no sign. I continued to treat Mr. Armstrong, visiting him twice a day after that until his death, which occurred not less than a week nor more than ten days after I was called to see him. His death was due to complications resulting from the injuries described. The direct cause of his death was septicemia, or blood poisoning, produced by the wounds on his fingers as already described. He complained several times of pain in his side and stomach. At the time of his death his bowels were very much distended with gas which caused paralysis of the bowels resulting from the septic infection which I have mentioned. This paralysis of the bowels began about two days before his death, and was the result of septic infection caused by the wounds in the hand. The bowels could not be moved the last two days of his life. His death was caused by septicemia, septic infection, the common name for which is blood poisoning. The septicemia began some days after I was first called to see him. He had no wounds except those on the head and hand, and no other positive evidences of hurt on his body as far as I could see. Those wounds did not directly produce death. They produced septicemia which caused his death. By septic infection is meant poisoning of the system from germs, or products of germs, introduced

into the blood through wounds, or other sources; it is a paralysis of the system due to the presence of germs or particles of germs in the system." Upon this evidence it is sought to justify the affirmative charge for the defendant, which was given by the trial court; the contention being that, if believed by the jury, it showed that the injury sustained by the intestate was not the proximate cause of his death, but that his death was the result of an independent, intervening cause, towit: the septicemia, or blood poisoning which set in or began to infect his system several days after the injuries were received. It is difficult to conceive how this position can be even plausibly supported. It is clear on this evidence that intestate's death resulted in direct line and sequence of causation from the injuries he received in the fall from the car. So far from there being an independent, superceding or responsible cause of death other than these injuries, there is absolutely no other cause shown or hinted at in this evidence. The fall produced the injuries; the injuries produced blood poisoning, and the blood poisoning produced death. There was no break in the chain of causation from the alleged negligent act to the death of intestate. The blood poisoning was not an independent cause. It was not a superseding cause. It was itself a result, or, perhaps more accurately, a mere development of the injuries. It is not an important consideration, even if it be a fact, that blood poisoning is not a usual and ordinary result or development of wounds of the character inflicted upon the intestate. It is not of consequence that the defendant or its motorman did not have the infection of septicemia in contemplation when the intestate was injured. They did not, we take it, have in contemplation even the mashing of his hand, and if they did they would be guilty much beyond the charges made by this complaint. The logical rule in this connection, the rule of common sense and human experience as well, (if indeed there can be a difference between a logical doctrine and one of common sense and experience, as some authorities appear to hold), is that a person guilty of negligence should be held responsible for all the consequences which a prudent and expe-

rienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind.—1 Sher. & Red. Negligence, § 29. That there was a reasonable possibility of blood poisoning being developed or produced by the wounds which intestate received admits of no controversy. That blood poisoning did result from the wounds is to like degree clear on the evidence; and confessedly blood poisoning produced death. Death was, therefore, within the range of responsibility for the negligent act which inflicted the wounds; and instead of the affirmative charge for defendant being justified on the theory that the evidence showed that death did not result from the injuries, the court might well have instructed the jury to find that the injuries did produce the death if they believed the evidence.

We cite several authorities, but we need refer especially to one only, that of *Ginna v. Second Avenue Railroad Co.*, 67 N. Y. 596, which is on all fours with the case at bar in the respect under consideration; the intestate, for whose death that action was prosecuted, was thrown from the platform of a street car through the negligence of the driver. "By the fall," said the court, "his arm was fractured above the elbow, the broken fragments of the bone protruding and wounding the flesh and the skin. That resulted in the development of a poisonous discharge which remaining in the wound was absorbed by the blood, and in three weeks afterwards he died from the effects of the poison. It was not claimed upon the trial that the injury had been improperly treated or that death was the result of it [improper treatment]. And the position could not have been reasonably taken in view of the evidence of the physician, for he testified that the bones had been put in their proper position, and that the physicians of the hospital, of which the witness was one, would probably have treated the injury in the same way it had been done before the deceased went there. More attentive treatment might have saved the life of the young

man, but its necessity was not apparently suspected. He was subjected to that which followed and was designed to be proper by the wrongful act of the defendant. That was the cause which placed his life in jeopardy, because it produced the wound whose poisonous discharges resulted in his death. No other wrong or misconduct than that of the defendant was shown to have intervened; that caused his death within the meaning of the provisions of the statute relating to this class of cases, by producing the bodily condition rendering it under the circumstances inevitable. It was the operative as well as the proximate cause of death, and that was sufficient to render the defendant liable." See also *Ehrgott v. City of New York*, 96 N. Y. 264; *Pollett v. Long*, 56 N. Y. 200; *Sauter, Admr. v. New York Central & Hudson River Railroad Co.*, 66 N. Y. 50; Tiffany Death by Wrongful Act, § 76; 1 Sher. & Red. on Negligence, §§ 26 *et seq; Louisville & Nashville Railroad Co. v. Jones*, 83 Ala. 376.

Reversed and remanded.