# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

## BACON v. PULLMAN CO.

### (Circuit Court of Appeals, Fifth Circuit. January 28, 1908.)

### No. 1,555.

**1. CARRIERS—SLEEPING-CAR COMPANIES—LOSS OF "BAGGAGE"—JEWELRY.**

While a passenger is entitled to carry with her and retain in her immediate custody as baggage a reasonable quantity of personal effects for her use, comfort, and adornment during the journey, according to her station in life, a carrier or sleeping-car company owes her no duty with respect to valuable jewelry carried by her in a hand bag for transportation merely, without any intention or purpose of using it during the journey; the jewelry under such circumstances not being regarded as baggage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1583.

For other definitions, see Words and Phrases, vol. 1, pp. 663–670; vol. 8, p. 7586.]

**2. SAME—ACTS OF SERVANT—SLEEPING-CAR PORTER—THEFT.**

A sleeping-car company, being under no duty to care for the jewelry, which did not constitute baggage, of a passenger carried by her into her stateroom, was not responsible for the theft of the jewelry by its porter, such act being outside the scope of his employment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1585.

Duties and liabilities of sleeping-car companies, see notes to Duval v. Pullman Palace Car Co., 10 C. C. A. 335; Edmundson v. Pullman Palace Car Co., 34 C. C. A. 386.]

**3. SAME—ACTIONS—COMPLAINT.**

Where, in an action against a sleeping-car company by a passenger, for loss of her hand bag containing medicine and stimulants which she had purchased for use during the journey, she being sick and in charge of a nurse, the complaint alleged a duty on the part of defendant's porter as its agent and servant to care for such bag as a part of plaintiff's effects, and that the duty was breached by the porter's wrongful act in taking and carrying away the hand bag, medicine, etc., while acting within the scope of his employment, the complaint stated a cause of action ex delicto, and not ex contractu.

**4. SAME—DAMAGES—PHYSICAL SUFFERING AND MENTAL DISTRESS.**

Plaintiff, while sick and in charge of a nurse, took passage on defendant's sleeping car, with medicine and stimulants, prescribed by her physician for the journey, in a hand bag. Shortly after the beginning of the journey, she was deprived of the medicine and stimulants by the theft of the bag by the porter, and suffered, unrelieved, during the night, pain and distress

incident to her diseased condition, and was taken from the train at the end of the journey in a state of physical collapse, which could have been prevented and relief afforded to her by the use of the medicine and stimulants. *Held,* that the theft of the bag and a deprivation of the medicines, etc., at least contributed to the result complained of, and that plaintiff was therefore entitled to recover damages for her physical suffering and mental distress, and was not limited to a recovery of the value of the medicine, stimulants, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1597–1600.]

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

Willie C. Bacon, plaintiff in error, brought this action against the Pullman Company, defendant in the court below, claiming $50,000 damages for the loss of certain toilet articles and pieces of jewelry and the hand bag which contained them, the same alleged to have been lost by the negligence of the defendant, or by the theft of its porter, while plaintiff was an occupant of a stateroom on one of the defendant's sleeping cars as a passenger between Cincinnati, Ohio, and Chattanooga, Tenn.; and for physical pain and mental anguish suffered by her because of the loss and consequent deprivation of the use of certain medicine and stimulants also carried by her in the hand bag. The testimony of the plaintiff was to the effect that on the 10th day of March, 1904, she purchased from the agent of the defendant at Cincinnati, Ohio, the use of a stateroom from Cincinnati, Ohio, to Chattanooga, and at 8 o'clock on the night of March 10th, in company with her mother, she boarded the sleeping car and occupied and used a stateroom thereof between those two cities; that at the time she boarded the car she was physically ill, and had in her hand bag certain medicine and stimulants prescribed by her physician to stimulate and maintain the action of her heart, and certain medicines to be taken at given intervals for her illness; that the hand bag likewise contained a cameo pin set with pearls, a pearl brooch, and toilet articles; that at the time the plaintiff was in mourning for the death of her husband, and was not wearing the jewelry, but was carrying it to her home in Gadsden, Ala.; that she had not worn the jewelry at any time during the journey upon which she then was, nor did she expect to; that she was not carrying it for the purpose of wearing, and that she had intended to pack the jewelry in her trunk, but that it had been forgotten and was placed in her grip. There was also evidence tending to show the value of these articles. Plaintiff also offered testimony tending to show the loss of the grip with its contents shortly after leaving Cincinnati. She testified that she took a dose of medicine from the hand bag, and at that time the porter of the sleeping car was in the stateroom making down her berth, and that in about 30 minutes she desired to take another dose of medicine, and discovered that the hand bag and its contents were missing; that no one entered the stateroom between the time she took the first dose of medicine and the time she missed the hand bag, save and except the porter of the car, and that no one else was in the stateroom except her mother, who was traveling with and nursing her in her illness. She further testified, over the defendant's objection, that she was physically ill, and that being deprived of the use of her medicine from Cincinnati to Chattanooga during the space of an entire night caused her to suffer pain, and that when she reached her destination she was in a state of collapse. Upon motion of the defendant this testimony as to her physical suffering was excluded. The court also sustained an objection to a question propounded to the plaintiff seeking to elicit a statement by her that she suffered mental anguish. The court also, on motion, excluded the testimony of plaintiff's witness Dr. Camp and Mrs. Staunton as to her physical suffering and the relief the medicine and stimulants would have afforded if administered; also the evidence of Dr. Camp as to her physical condition when taken from the train at Gadsden, Ala., on the morning of March 11th.

The court charged the jury that plaintiff was not entitled to recover any damages for the loss of the cameo pin or the pearl brooch. Under instructions

submitting the question to it, the jury returned a verdict in favor of the plaintiff for the value of the toilet articles and the grip containing them.

Alex C. Birch and Jos. J. Willett, for plaintiff in error.

John B. Knox and W. P. Acker, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

MEEK, District Judge. While the assignments of error are numerous, they in effect raise but three points that need be considered. The first is, whether the plaintiff in error is entitled to recover damages for the loss of the jewelry she was carrying with her in the hand bag. According to her own testimony, she was carrying it not with any purpose or intention of using during her journey, but simply to transport it. The jewelry, therefore, cannot be considered baggage within the definition of that term as used in this connection. She had the right to carry with her and retain under her possession and control as baggage a reasonable quantity of personal effects for her use, comfort, and adornment during the journey, having in view her station in life. 6 Cyc. p. 661; Lewis v. Car Co., 143 Mass. 267, 9 N. E. 615, 58 Am. Rep. 135; Pullman Palace Car Company v. Adams, 120 Ala. 581, 24 South. 921, 45 L. R. A. 767, 74 Am. St. Rep. 53; Cooney v. Pullman Palace Car Company, 121 Ala. 368, 25 South. 712, 53 L. R. A. 690; Pullman Palace Car Company v. Hatch, 30 Tex. Civ. App. 303, 70 S. W. 771; Miss. Central R. v. Kennedy, 41 Miss. 671. As to such baggage the duty is imposed upon the sleeping-car company to exercise reasonable care to prevent loss or theft. See authorities, supra. But as to articles not intended for such use in the course of the journey and being carried solely for the purpose of transportation, the company owes the passenger no legal duty whatever. As to these the status of the parties is not changed by the contract to afford sleeping-car facilities. Therefore, the attitude of the company toward the jewelry carried by the plaintiff in error was no different after she had purchased the stateroom in the sleeping car and occupied it than it was before. The contention is that if the porter stole the jewelry the company would be responsible for the loss. Such responsibility could not attach unless there was a duty to be performed by the company with reference to the jewelry and the failure to perform the duty arose from the negligence or wrongful act of the porter delegated to perform it. This was not the case. If the porter stole the jewelry, he was acting outside the scope of his employment, and with regard to property concerning which there was no duty imposed upon the company. Levins v. New York, N. H. & N. H. R. Co., 183 Mass. 175, 66 N. E. 803, 97 Am. St. Rep. 434; Root v. New York Central Sleeping Car Co., 28 Mo. App. 199: Illinois Central Railroad Co. v. Charles Handy, 63 Miss. 609, 56 Am. Rep. 846; Cooney v. Car Co., supra; 3 Sutherland on Damages (3d Ed.) p. 2818.

Second. It is urged by counsel for plaintiff in error that the action as stated in the several counts of the complaint sounds ex delicto and not ex contractu, and that the trial court erred in treat-

ing it in his charge to the jury as an action in assumpsit. The gra·vamen of the action as stated is for the breach of duty on the part of the defendant company through the wrongful act of its porter in taking and carrying away the plaintiff's hand bag containing the medicine and stimulants while acting in the scope of his employment. It is true, there is no direct affirmative allegation of the duty on the part of the defendant company arising out of the contract to furnish sleeping-car facilities such as indeficient pleading would require, but the counts do allege a duty on the part of the porter as agent or servant of the defendant company, and that the duty was breached by his wrongful act. Facts are stated from which the law will imply a duty on the part of the defendant. The contract is alleged, as is also the breach thereof. Upon the subject of proper pleading in an action ex delicto, when the duty breached arises from contractual relations, the Supreme Court of Alabama has ruled as follows:

"When the duty springs out of the relation of the parties growing out of a contract, of necessity the contract and the terms of it must be averred in the complaint in order to show the duty, and, if a recovery is sought for breach of duty growing out of a breach of contract, a breach of contract must also be shown by the averments." Western Union Telegraph Company v. Krichbaum, 132 Ala. 535, 31 South. 607.

The pleading in the several counts is in a measure loose and meetly the subject of criticism, but we are of the opinion that its fair and reasonable intendment supports an action ex delicto.

Third. Is the plaintiff in error entitled to recover in this action for the physical suffering and mental distress alleged to have resulted from the deprivation of her medicine and stimulants? Counsel for the defendant in error contend that the act of negligence charged against the defendant was not such that physical suffering and mental anxiety were reasonably to be anticipated as the result thereof; in other words, that the defendant could not reasonably have anticipated that the plaintiff would undergo physical suffering and mental distress because of the deprivation of her hand baggage. Whether or not a result can reasonably be anticipated as likely to flow from a negligent act is not a sufficiently comprehensive test for imputability. Mr. Wharton in his excellent work on the Law of Negligence, § 73, thus accurately defines causation as pertaining to negligent acts:

"A negligence is the juridical cause of an injury when it consists of such an act or omission on the part of a responsible human being as in ordinary natural sequence immediately results in such injury."

He continues (section 77):

"Nor, on the other hand, * * * can we claim that the fact that a particular consequence could not be reasonably foreseen relieves its negligent author from imputability. The fact is that the consequences of negligence are almost invariably surprises. A man may be negligent in a particular matter a thousand times without mischief; yet, though the chance of mischief is only one to a thousand, we would continue to hold that the mischief, when it occurs, is imputable to the negligence. Hence it has been properly held that it is no defense that a particular injurious consequence is 'improbable' and 'not to be reasonably expected,' if it really appear that it naturally followed from the negligence under examination."

In the case of Stevens v. Dudley, 56 Vt. 158, Judge Ross, in commenting upon the text of Mr. Wharton, says:

"The learned author shows that the test of reasonable expectation of the injurious consequences for which recovery is sought as determinative of the liability of the person who committed the negligent act has been abandoned by the great majority of the courts of last resort, both in England and in this country, and especially in the more recent decisions."

In the case of Mentzer v. Western Union Telegraph Company, 93 Iowa, 752, 62 N. W. 1, 28 L. R. A. 72, 57 Am. St. Rep. 294, Judge Deemer expresses the conception of the Supreme Court of Iowa as to the true test of legal imputability as follows:

"He who is responsible for a negligent act must answer 'for all the injurious results which flow therefrom by ordinary or natural sequence, without the interposition of any other negligent act or overpowering force.' Whether the injurious consequences may have been reasonably 'expected' to follow from the commission of the act is not at all determinative of the liability of the person who committed the act to respond to the person suffering therefrom."

The rule in the present day as given sanction by courts of high authority is concisely and aptly expressed by Chief Justice McClellan in the case of Armstrong v. Railroad Company, 123 Ala. 233, 26 South. 349, as follows:

"The logical rule in this connection, the rule of common sense and human experience as well, * * * is that a person guilty of negligence should be held responsible for all consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow if they had occurred to his mind."

This statement of the rule is reannounced and adhered to by that court in the later case of Railway Company v. Quick, 125 Ala. 553, 28 South. 14.

The plaintiff in error had provided herself with medicine and stimulants, and carried them with her in a hand bag to afford relief from the physical pain and mental distress occasioned by her condition of disease. Because of the contract relations existing between her and the defendant company, unquestionably the legal duty was imposed on the latter to use reasonable care to protect and guard her in the possession of these, and to prevent their loss. At the trial evidence was either introduced or offered tending to show that this duty was breached by the wrongful act of the porter in taking and carrying away the hand bag containing the medicine and stimulants; that the plaintiff was thereby deprived of their use; that she suffered unrelieved during the night the pain and distress incident to her diseased condition, and was taken from the train at the end of her journey in a state of physical collapse; that the medicine and stimulants, if administered, would have effected the desired relief. Did not her suffering follow in direct and logical sequence as the result of the act of the porter?

It is true her suffering resulted primarily from her disease; had she not been afflicted she would not have suffered, and she would not have needed medicine and stimulants. But she was afflicted, and she

suffered mentally and physically. Relief could have been afforded by the use of medicine and stimulants. These were provided her, and they were at hand to be administered. The porter carried away the hand bag containing them, and she was thereby deprived of her relief, and as a result she suffered the effects of her sickness. In this action she seeks to recover for the suffering consequent upon her condition of disease, but endured because of the deprivation of relief. Her suffering during the night and her condition of collapse at her journey's end may be attributed to two concurring causes, to wit, her sickness and the deprivation of relief. The latter must be said to be the result of the act of the porter in carrying away the hand bag. Obviously there is direct causal connection between this act and the suffering of the plaintiff. Being acquainted with conditions as they actually existed, a person need not have had much prudence or experience to readily realize that the consequences that did follow the porter's act would so follow. The fact that the sickness of the plaintiff concurred with the wrongful act of the porter in contributing to the result complained of does not at all relieve the defendant of responsibility for its negligence. The authorities are uniform to the effect that the negligence of the defendant, in order to create liability, need not be the sole cause of plaintiff's injuries. We cite a few of the cases: Grand Trunk R. Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; St. Louis, etc., R. Co. v. Commercial Union Insurance Co., 139 U. S. 223, 11 Sup. Ct. 554, 35 L. Ed. 154; S. W. Tele., etc., Co. v. Robinson, 50 Fed. 810, 1 C. C. A. 684, 16 L. R. A. 545; Flaherty v. Minneapolis, etc., R. Co., 39 Minn. 328, 40 N. W. 160, 1 L. R. A. 680, 12 Am. St. Rep. 654.

The wrongful act of the porter, having been viewed in the light of its consequences, logically and in right reason, seems to deserve a classification with those acts of negligence for which full compensatory damages are awarded. The unusualness of the facts involved make difficult the task of assimilating the case with any well-recognized class of negligence cases. Mr. Thompson in his Commentaries on the Law of Negligence, vol. 1, § 150, says:

"The duty of care and of abstaining from injuring another applies to the sick, the weak, and the infirm, as well as to the strong and healthy. When this duty is violated the measure of damages is the injury which results, though this injury may not have followed but for the peculiar physical condition of the person injured, although it may have been thereby aggravated."

After an extended review of the decisions he deduces that "if A., through his negligence, aggravated an injury or a disease from which B. is already suffering, B. may recover damages from A." We find this deduction amply justified on the authority of the decided cases. Railroad Co. v. Lockhart, 79 Ala. 315; Railway Co. v. Brown, 16 Tex. Civ. App. 93, 40 S. W. 608; Railroad Co. v. Shafer, 54 Tex. 641; Railway Co. v. Jones, 108 Ind. 551, 9 N. E. 476; Brunker v. Cummins, 133 Ind. 443, 32 N. E. 732. Some of the courts have adopted the view that a person may recover compensatory damages for physical injuries resulting solely from fright or other mental disturbances caused by the negligent act of another where there has been no im-

pact or injury to the person from without. Dulien v. White & Sons, 2 K. B. 669 (1901); Bell v. Railway Co. L. R. 26 Ir. 428; Purcell v. St. Paul, etc., R. Co., 48 Minn. 134, 50 N. W. 1034, 16 L. R. A. 203; Hill v. Kimball, 76 Tex. 210, 13 S. W. 59, 7 L. R. A. 618; Pugh v. London, etc., R. Co., 2 Q. B. 248; Sloane v. Railway Co., 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193; Yoakum v. Kroeger (Tex. Civ. App.) 27 S. W. 953. On the other hand, courts whose opinions are worthy of much respect and consideration refuse to permit recovery for physical injuries arising solely from such causes. The Supreme Judicial Court of Massachusetts has taken this position in the case of Spade v. Railway Co., 168 Mass. 285, 47 N. E. 88, 38 L. R. A. 512, 60 Am. St. Rep. 393. A reading of the opinion reveals that the action of the court is based not upon an examination of the consequences of the act of negligence, with a classification accordingly, but upon the ground that it would be "unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright, and that this would open wide the door to unjust claims which cannot be successfully met." In reaching this conclusion it is argued that:

"Not only the transportation of passengers and the running of trains, but the general conduct of business and the ordinary affairs of life, must be done on the assumption that persons who are liable to be affected thereby are not peculiarly sensitive, and are of ordinary physical and mental strength. If, for example, a traveler is sick or infirm, delicate in health, specially nervous or emotional, liable to be upset by slight causes, and therefore requiring precautions which are not usual or practicable for travelers in general, notice should be given, so that, if reasonably practicable, arrangements may be made accordingly and extra care be observed. But as a general rule, a carrier of passengers is not bound to anticipate or guard against an injurious result which would only happen to a person of peculiar sensitiveness."

In commenting upon this ruling in Homans v. Boston Elevated Railway Co., 180 Mass. 456, 62 N. E. 737, 57 L. R. A. 291, 91 Am. St. Rep. 324, the same court, speaking through Holmes, C. J., says:

"As has been explained repeatedly, it is an arbitrary exception based upon a notion of what is practicable that prevents a recovery for visible illness resulting from nervous shock alone."

There is manifest in the case last cited a disposition to restrict rather than to extend the application of what is stated to be an arbitrary exception to the general rule.

We have not overlooked the case of Haile's Curator v. Texas & Pacific Railway Co. (decided by this court) 60 Fed. 557, 9 C. C. A. 134, 23 L. R. A. 774. Under the facts there alleged it was held that insanity following a shock (presumably a nervous shock, although this is not made quite plain) received by plaintiff's ward in a wreck of a passenger train upon which he was a passenger, was too remote and the result of such an unusual combination of circumstances that there could be no recovery. Without criticising or reaffirming the doctrine there announced, we consider that the facts of the present case render it distinguishable from Haile's Curator Case. It is also distinguishable from Spade v. Railway, supra, and the class to which it belongs. This is made quite plain by the testimony of the plaintiff's

mother, Mrs. E. S. Staunton, from a narrative statement of which, as found in the bill of exceptions, we quote:

"She is the mother of the plaintiff, and was with her when she boarded the sleeping car 'Remwick' at Cincinnati, Ohio, at about 8 o'clock on the night of March 10, 1904, in company with plaintiff, and that together they occupied the stateroom of said sleeping car; that at the time the plaintiff was physically ill, and that she had certain stimulants and medicines consisting of digitalis, strychnine, and morphine, in a traveling bag, together with certain articles of personal use, comfort, and ornament; that shortly after leaving Cincinnati the ticket or coupon for the use of the stateroom was surrendered to the conductor of the sleeping car, and shortly after passing Grand Junction, near Cincinnati, the plaintiff took a dose of medicine which was procured from the hand bag, and that at the time the porter of the sleeping car, who was a colored man and whose name witness did not know, was in the stateroom making down plaintiff's berth, and that in about 30 minutes after taking the first dose of medicine she started to give her daughter, Mrs. Bacon, another dose of medicine, when the hand bag was missed, and between the time of the taking the medicine and the missing hand bag no one was in said stateroom except the plaintiff, witness, and the porter; that the Pullman conductor, when he got the tickets, did not come into said stateroom, but stopped at the door; that the porter was the only person in said stateroom besides herself and daughter, Mrs. Bacon. Witness further stated that, when she went to give plaintiff the second dose of medicine and missed the hand bag, she rang for the porter, who came to the stateroom and appeared to be very much excited as soon as he came, without waiting to be told what she had rung for. Witness further stated that she requested and begged the conductor several times during the night to search for the hand bag, and told him how plaintiff was suffering, and the conductor promised that he would, from time to time, as soon as he got through checking up his business, collecting tickets, etc., and that every time the conductor came to the door of the stateroom the colored porter would come with him and stand within hearing of the conversation between her and the conductor, although he had not been asked or sent for."

The plaintiff was sick and suffering physically and mentally, and the affirmative wrongful act of the porter directly resulted in depriving her of alleviation or relief from her suffering. The wrongful act for the result of which it is sought to hold the defendant responsible did not transpire from any act taken in the management or operation of the train of a carrier of passengers, and which of necessity must affect all alike, the well and the sick, the strong and the weak; so that the reason of the rule as announced in Spade v. Railroad Co. has no application. The act of the porter affected, and was calculated to affect, the plaintiff alone, and while in the scope of his employment was not such an act as was required even in the management or proper care of a sleeping car. The circumstances bearing upon the disappearance of her hand bag, her condition of disease and resultant suffering, are susceptible of proof which may be controverted. The effect of the medicine and stimulants upon the suffering occasioned by her sickness, and whether or not they would have alleviated or relieved her, were questions which could be answered by witnesses skilled in medicine, as could also the effect of their withdrawal. We do not consider this a case where analysis of consequences and logical conclusion therefrom should give way to expediency, nor where the rights of the individual should yield because to recognize and vindicate them might open the door and give rise to unjust claims. To adopt such a course would not only involve the denial of redress in meritorious claims, but would as

well imply a distrust of the ability of our courts to adequately examine into and find the truth of such claims.

For the conversion of personal property the rule of damages is that a person is entitled to recover compensation for the loss sustained, measured by the value of the property taken. Sedgwick on Damages (8th Ed.) § 40; 2 Joyce on Damages, §§ 1035–1037. Under the facts and circumstances obtaining here, this measure of relief would be wholly insufficient and inadequate to compensate for the wrong done. The porter's wrongful act worked double injury to plaintiff in error. It deprived her of the value of her drugs, and also deprived her of the relief from suffering their administration would have afforded. The value of the drugs becomes inconsequential when compared to the suffering entailed from their theft. If the theft cannot be accurately stated to be the infliction of a physical injury, it was at least a personal injury which approximately caused physical suffering and distress. Could the drugs have been forthwith resupplied, then their value would be compensation for their wrongful taking. But the owner was a sick traveler who had taken passage for the night on a railway train, and the journey was commenced before the loss took place or was discovered. If upon a trial of the case the jury should find that the porter's wrongful act deprived the plaintiff in error of her medicines and stimulants, and that if these had been administered as prescribed they would have relieved her of the physical pain and mental distress caused by her diseased condition, and that because of being deprived of their administration she suffered physical pain and mental distress, the resulting damages could not go uncompensated any more justly than could the loss to her of the value of the drugs or the receptacle in which they were carried. We conclude that, if plaintiff was injured in the manner claimed, she is entitled to her remedy in the nature of compensatory damages.

It follows that the trial court erred in its ruling excluding the testimony offered by plaintiff in error, tending to show physical suffering and mental distress as resulting from the deprivation of her medicine and stimulants, and in peremptorily instructing the jury to find for the defendant on this phase of the case. Therefore the judgment of the court must be set aside, with directions to grant a new trial.

PARDEE, Circuit Judge. I dissent from the opinion and judgment of the court. In my opinion, the action is one ex contractu, and therefore the ruling denying the plaintiff below the right to recover for jewelry which she was not carrying as baggage was correct. If, however, the action is one ex delicto, as my Brethren hold, then it seems to me that the plaintiff below would have the right to recover for her jewelry carried in the bag alleged to have been stolen by the Pullman porter, whether it was baggage or not, on the theory that the loss directly and naturally resulted from the claimed wanton act of the porter, for which it seems the Pullman Company is to be held liable.

In my opinion, it is immaterial whether the action is one ex delicto or ex contractu, it being essentially a case where a principal is to be held liable for the negligence of his servant, and the damages to be

allowed under such circumstances are "those that are the ordinary natural result of the negligence, such as are usual and might therefore have been expected," and remote damages should be rejected. It must be conceded that the sufferings of the plaintiff below were caused by her disease, and only indirectly affected by the loss of her medicines.

But I do not care to elaborate or cite authorities other than the decision of this court in Haile's Curator v. Texas & Pacific Railway, 60 Fed. 557, 9 C. C. A. 134, 23 L. R. A. 774, and authorities there cited.