PULLMAN PALACE CAR COMPANY v. E. E. HATCH.

Decided November 5, 1902.

**1.—Sleeping Car Company—Liability for Loss of Baggage—Degree of Care.**

Sleeping car companies are not held to the responsibility of common carriers or innkeepers, and to warrant a recovery for loss of stolen baggage, it must appear that reasonable care was not used by the company in guarding the baggage.

**2.—Same—Negligence—Burden of Proof.**

The mere proof of loss of property by a passenger while occupying a berth in a sleeping car does not make out a prima facie case, and some evidence of negligence on the part of the sleeping car company must be adduced in order to warrant a recovery against it.

**3.—Same—Reasonable Care.**

A sleeping car company must have some one to watch over its sleeping passengers, and it follows as a corrollary to that proposition that if a perfect watch be kept and the proof does not tend to show that the property was not appropriated by the watchman, a complete defense is made to a charge of failure to exercise reasonable care.

Appeal from the County Court of Bexar County.  Tried below before Hon. Robt. B. Green.

*J. D. Guinn* and *Martin J. Arnold,* for appellant.

*Keller & Williams,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellee to recover from appellant $500, the value of certain property belonging to members of his family.  The recovery was for $275.

The rule is well settled in the several States of the Union that sleeping car companies are not held to the responsibility of common carriers or innkeepers, but that in order to recover for lost or stolen property it must appear that reasonable care was not exercised by the company in guarding the property of passengers on the cars.  The rule is thus formulated in a leading Massachusetts case: "While it is not liable as a common carrier or as an innkeeper, yet it is its duty to use reasonable care to guard the passengers from theft; and if, through want of such care, the personal effects of a passenger, such as he might reasonably carry with him, are stolen, the company is liable for it."  Lewis v. Car Co., 143 Mass., 267.  The rule enunciated has been, so far as we know, followed in every State where the question has arisen.  Pull-

man Car Co. v. Pollock, 69 Texas, 120; Car Co. v. Matthews, 74 Texas, 654; Mann Boudoir Co. v. Depre, 4 C. C. App., 540, 21 L. R. A., 289; Ball v. Railway (Va.), 32 L. R. A., 792; Car Co. v. Martin (Ga.), 44 L. R. A., 790; Cooney v. Pullman Car Co. (Ala.), 53 L. R. A., 690; Carpenter v. Railway (N. Y.), 26 N. E. Rep., 277; Pullman Car Co. v. Gavin (Tenn.), 23 S. W. Rep., 70; Voss v. Car Co. (Ind.), 44 N. E. Rep., 1010.

In the case of Carpenter v. Railway, above cited, the New York Court of Appeals said: "The mere proof of the loss of the money by a passenger while occupying a berth does not make out a prima facie case, and to sustain a recovery, some evidence of negligence on the part of the defendant must be given." The latter part of the quoted statement must necessarily follow the enunciation of the first part of it, and is the rule generally adopted by American courts, although in Georgia proof of the loss is held to place the burden on the sleeping car company of establishing proper care and diligence on its part. Kates v. Car Co., 23 S. E. Rep., 186. The former is the rule adopted in Texas.

In the New York case, as in the present case, the ground of negligence was a failure to exercise reasonable care in guarding the property of appellee's family, and it was said: "A corporation engaged in running sleeping coaches, with sections separated from the aisle only by curtains, is bound to have an employe charged with the duty of carefully and continually watching the interior of the car while berths are occupied by sleepers."

After stating substantially the same rule the Supreme Court of Tennessee, in the Gavin case, above cited, said: "It follows as a corollary from this proposition, that, if the servant or agent of the company charged with the duty of watching and protecting the property of the guest purloins it himself, the company will be liable for its value." Therefore under the allegations in the petition in this case, if an employe of appellant took the property, or through his carelessness permitted some one else to take it, the company must be held liable for its value. We briefly state the facts connected with the loss of the property.

The proof establishes that the property, for the value of which the suit was instituted, was placed in a small valise by Mrs. Hatch on a seat in the sleeping car coach in front of the one occupied by her, the two forming the seats in the section, the lower berth of which had been paid for by her, a lady's skirt being placed over it. A basket of fruit occupied the same seat, the basket being next the window, the valise next the aisle of the car. No one had engaged the upper berth of the section, and, in response to the desire of Mrs. Hatch, the berths in the section were not prepared for sleeping purposes, and also at her desire both windows of the section were left open, it being a hot night in July. The train left San Antonio at 9 o'clock p. m., and some time after 10 o'clock Mrs. Hatch, although she had informed the conductor that she never slept on a train, went to sleep and did not wake until 2 or 3 o'clock, the following morning. The valise was then gone. The train

reached Waelder at 11:20 p. m., and as the valise was afterwards found on the ground at Waelder, it may be assumed that it was taken from the seat at some time between the time Mrs. Hatch fell asleep and the time the train reached Waelder. The proof established that no passenger came into the sleeping car between San Antonio and Houston. The train reached Houston at 4 o'clock a. m. The proof established that strict watch was kept over the car during the night, and there is no evidence that any of the passengers left the sleeping car during the night. The car was not opened at Waelder, and the porter swore that he did not leave the car at that place. There were eight or ten passengers on the sleeping coach and several of them, including the general claim agent of the company, occupied the smoker at the end of the car, left open at stations, and could see anyone entering until after the train passed Waelder. The reputation of the porter for honesty was shown to be good.

The question arises, do the facts present any circumstances tending to show a lack of reasonable care on the part of appellant? We give the evidence of negligence as presented by appellee's brief:

"The record shows that the berth occupied by Mrs. Hatch was not made up, but she sat in it facing the engine, with her feet on the opposite seat. That the grip which was afterwards stolen was placed on the end of the seat and her skirt was thrown over it; that Mrs. Hatch while sitting at the end of the seat next to the aisle opened a valise similar to the one which was stolen, and took out her money and started to count it, and her father told her not to do so, and she looked up and the Pullman porter was standing in the door, looking right at her, and she looked right into his eyes. That Mrs. Hatch went to sleep a little after 10 o'clock, and the next morning in Houston the grip was gone. That in Houston the next morning when Dr. Spring discovered the grip was missing, about 4:45, he told the porter to tell the conductor to come to him, and the porter returned and said he had told the conductor, and that he would be there in a few minutes; that Dr. Spring waited for a considerable time and the conductor did not come, and he told the porter the second time to tell the conductor to come and see him about the satchel, and the porter returned and said the conductor was dressing; that Dr. Spring and family had to go to breakfast, and they never did see the conductor on that trip. The car is so constructed that it is impossible for anyone to go through the front end without being noticed. The front entrance is a smoking room and you have to go through that to enter the car, and up to 12:30 the smoking room was full of people, and no outsider could have come into the entrance without attracting attention. The door at the back end of the sleeping car is kept locked, and it is impossible for anyone to get into the sleeper without passing by the porter. It was impossible for anyone not in the car to have come in there and stolen the grip. The porter had the keys to the cars and could go in and out the back doors as he desired, and

nobody could come into that sleeper that night who had no business there, but the brakeman, train conductor, the porter, and the Pullman conductor. Dr. Spring especially requested the porter to look out for Mrs. Hatch, telling him to take care of her, that she was sick. The porter's duty is to stand guard especially after everybody has gone to bed, and he got a camp stool and sat down in the smoking room at the front end of the car, and no one could have gotten into the car without him seeing them. The porter sat down where he could look down the aisle, and if anyone came on the front way they would have to step over him. All the berths in the car were not made up that night. The grip was found near the station at Waelder the following morning, and the jewelry had been taken from it."

It is not claimed by appellee that the property was taken through the window by some person on the outside of the car, but it is contended that all the facts tend to establish that it was taken by some one in the car, and it is claimed that the testimony demonstrating that a perfect watch was kept by the porter, and he having seen Mrs. Hatch put the money in a similar valise, had a motive to steal and did steal the property.

The rule having been firmly established that sleeping car companies must have some one to watch over its sleeping passengers, it would seem to be a corollary to that proposition that if a perfect watch be kept and the proof does not tend to show that the property was appropriated by the watchman, that a complete defense is made to a charge of failure to exercise reasonable care. If from the fact of proof of a perfect watch, theft of the property by the watchman is to be inferred or presumed, the sleeping car company is placed in the position of being held liable if it did not keep watch and liable if it did, so that it would be to all intents and purposes a common carrier and an insurer of the property of its guests or passengers. We can see that a watchman might keep a perfect watch as to all other persons, and yet appropriate the property himself, but his dishonesty certainly can not be inferred from his faithfulness to his duty. If, in addition to the disappearance of the property, it had been proved that the porter was dishonest or any circumstance had been shown tending to show an appropriation by him, the verdict could be sustained. Not only was there a failure to establish any suspicious circumstance connecting the porter with the disappearance of the property, but on the other hand he established a good character for honesty. In a case where the facts were quite similar, the Court of Appeals held the evidence insufficient. Dargan v. Pullman Car Co., 2 App. C. C., sec. 691.

Assuming that the appellee has in his brief made a fair statement of all the facts tending to establish negligence, we arrive at the conclusion that the proof fails to sustain the verdict. In view of another trial we refrain from a further discussion of the evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*