PULLMAN CO. v. MOISE et al.
(No. 7577.)

(Court of Civil Appeals of Texas. Dallas. June 3, 1916.)

1. CARRIERS ☞417—SLEEPING CAR—LOSS OF WEARING APPAREL — QUESTION FOR JURY — NEGLIGENCE.

In an action for the loss of wearing apparel stolen from a sleeping car berth, and for consequent mental anguish and embarrassment, evidence *held* to make defendant's exercise of reasonable care in guarding the property a question of fact for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig. ☞417.]

2. TRIAL ☞194(15) — INSTRUCTIONS — PROVINCE OF JURY—WEIGHT OF EVIDENCE.

In an action for damages for the loss of wearing apparel stolen from a sleeping car berth, and for consequent mental anguish and embarrassment, an instruction, after defining negligence, that if the jury found and believed that defendant was guilty of negligence in failing to properly watch and guard the plaintiff's property against theft, and such negligence was the proximate cause of plaintiff's loss, to find for plaintiff, indicated the court's opinion that the evidence showed a failure to properly guard the property against theft, and was an instruction on the weight of the evidence, contrary to the mandatory provision of the statute, and reversible error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 465; Dec. Dig. ☞194(15).]

3. CARRIERS ☞413(2) — SLEEPING CAR COMPANIES—CARE REQUIRED.

Sleeping car companies are required to use only reasonable or ordinary care to guard the property of passengers from theft, and are not held to that high degree of care applicable to common carriers generally.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1584, 1585; Dec. Dig. ☞413(2).]

4. TRIAL ☞203(1)—INSTRUCTION—THEORY OF CASE.

In an action against a sleeping car company for the loss of wearing apparel stolen from a berth, and for consequent mental anguish and embarrassment, the defendant was entitled to an instruction as to its exercise of reasonable care to guard the property against theft applying the law to his theory of the facts as disclosed by the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 477–479; Dec. Dig. ☞203(1).]

5. TRIAL ☞256(3)—INSTRUCTIONS—REQUEST.

In such case and on the court's failure to so instruct in its general charge, the defendant had the right to prepare and have given a special charge supplying the omission in the general charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 630; Dec. Dig. ☞256(3).]

6. CARRIERS ☞417—SLEEPING CAR COMPANIES—LOSS OF WEARING APPAREL—DAMAGES—HUMILIATION.

A woman passenger, whose clothes were stolen from her sleeping car berth by cutting the screen from an open window, and who in consequence clad in a nightgown and kimona had to walk through the train, including another sleeper, several day coaches, and one or more smoking rooms to reach her trunk in the baggage car, from defendant's failure to exercise reasonable care to guard her clothes from theft, might recover for such humiliation and embarrassment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig. ☞417.]

7. CARRIERS ☞417—LOSS OF BAGGAGE—MENTAL SUFFERING—FEAR AND APPREHENSION.

In such case, the admission of plaintiff's testimony that she did not know what to do, did not know whether she would be without clothes the next evening when she arrived, and was in an awful predicament, and did not know what to do, was erroneous, as damages are not recoverable for mental anxiety or fear of some contingency, when the anxiety is unfounded and the contingency never comes to pass.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig. ☞417.]

Appeal from Dallas County Court; T. A. Work, Judge.

Action by Mrs. A. S. Moise and husband against the Pullman Company. Judgment for plaintiffs, and defendant appeals. Reversed, and cause remanded.

Etheridge, McCormick & Bromberg and Chas. T. McCormick, all of Dallas, for appellant. Moise & Mullican, of Dallas, for appellees.

TALBOT, J. Mrs. A. S. Moise, joined by her husband, A. S. Moise, brought this suit against the Pullman Company to recover damages alleged to have been sustained on account of the loss of wearing apparel while a passenger in one of defendant's sleeping cars, and on account of mental suffering, inconvenience, and embarrassment in consequence thereof, as a result of the negligence of the defendant. The plaintiff's amended original petition alleges that on the morning of July 8, 1914, some time between 2 and 3 o'clock, while plaintiff was traveling from Dallas, Tex., to Chattanooga, Tenn., and while she was sleeping in a lower berth of one of defendant's sleeping cars, the screen of the window of the berth was cut and articles of clothing of the value of $65 were abstracted from her berth; that this loss was caused by the negligence of defendant's servants in allowing the window of plaintiff's

berth to remain open and in failing to keep an adequate watch to protect plaintiff's effects from theft; that, as the result of plaintiff's loss of her clothes, she was forced to go through the train to the baggage car in insufficient attire whereby she suffered mental anguish and embarrassment. The prayer is for damages in the sum of $600.

There was testimony to the effect that the plaintiff, while en route from Dallas, Tex., to Chattanooga, Tenn., embarked at Shreveport, La., upon one of defendant's sleeping cars, and that she occupied lower berth No. 9, which was on the left-hand side of the car going east, and that after plaintiff had retired she was awakened somewhere between 2 and 3 o'clock in the morning by a ripping sound; that after she awoke the train began to move, and she then discovered that her clothes were gone, and that the screen in the open window of her berth had been cut open. She lay awake until it was light and then notified the porter and conductor of her loss. When she retired, plaintiff placed her clothing upon a shelf at the foot of the berth and in a hammock swung alongside the windows of the berth. One of the windows was closed, the other was open except for a screen which completely covered the open part of the window, and the open window was next to the shelf where her clothes were. The plaintiff did not request that the window should remain open. When the plaintiff got up in the morning, in order to reach the baggage car where her trunk and clothes were, the plaintiff, clad in a nightgown and kimona, had to walk through the train, including another sleeper, one or more day coaches, and one or more smoking rooms; there were many people in these coaches who looked at plaintiff as she went to and returned from the baggage car—all of which caused her humiliation and embarrassment. Her kimona had been brought by her for the purpose of being used in going from the berth to the dressing room in her sleeper, and she had used it for that purpose. The clothes that were stolen were subsequently found and were tendered to the plaintiff about six weeks after the loss. She inspected them and found that they were mussed up and were not as fresh looking as they had been when in her possession. One of the articles lost was a coat suit suitable for summer wear, and the season for its use was over when the clothes were tendered to plaintiff, and she declined to accept any of them.

B. F. Gay, the porter, testified, in substance, that he was on watch in the car in which Mrs. Moise was traveling throughout the night in question, and knew nothing of the loss until the morning after the occurrence; that he was in the car continuously throughout the night, except when the train would stop at stations, at which time he was on watch on the ground side of the car near the entrance; that at such times only one entrance to the car was open; that the

weather was hot at that time, and the window to plaintiff's berth was open before she retired, and plaintiff made no request with reference to whether the window should remain open or closed; that in warm weather the practice is to allow the window to remain open unless the passenger requests otherwise; that no other robberies had ever occurred to his knowledge from his car in the country traversed that night. This witness further testified:

"I do not know where this robbery occurred. I know it was before we got to Meridian, Miss. I would open the door on the left-hand side of the car, and if anybody, at any station between Vicksburg and Meridian, had attempted to get up on the left side of the car, I would have seen him. I attended to just one car. York, Ala., is 27 miles from Meridian. We got to York after we left Meridian. I had a passenger to put off at York, and then I was on the right-hand side of the car, and had to put him off on the right side. York, Ala., is a regular stop for the train. We got there at about 2:35 in the morning, something like that. I did not see anybody there. I might have told Mrs. Moise that her clothing were taken at York, Ala., and that there is where they were found. I did not look on the left-hand side of the car at York, as the station was not on that side. On the left-hand side of the train, at York, were just tracks and box cars. I don't know whether they had a night watchman around these box cars there or not, but I didn't see any. I did not look over on that side."

The conductor of the sleeping car testified, in substance, that he was the conductor of the car that plaintiff was in; that the porter was on watch in that car plaintiff was in, and he knew nothing of the robbery until next morning; that "in the sleeper where Mrs. Moise was the porter, Gay, was on watch. I saw him in there when I would pass through the cars. It is my duty to see that the porter is on watch, and, if one happens to fall asleep, I wake him. If Gay had not been on watch on the night in question, I would have known it and would have remembered it."

The case was submitted to a jury on a general charge and resulted in a verdict in favor of the plaintiffs for "$50 actual damages and $50 damages for mental anguish."

[1] The first assignment of error complains of the court's refusal to give a special charge requested by appellant directing the jury to return a verdict in its favor. This assignment challenges the sufficiency of the evidence, upon any fair analysis and construction of it, to show liability on the part of the appellant. The contention is that the undisputed evidence shows that an uninterrupted watch was kept by appellant's servants in charge of the sleeping car in question throughout the night upon which the loss complained of was sustained, and that such a showing constitutes a complete defense to appellee's cause of action charging a negligent failure on appellant's part to prevent loss of her property. We have stated what we regard as the most material testimony bearing upon the question here raised, and in view of the fact that the case will be reversed and remanded for another trial, because

of what we conceive to be error in the court's charge, it would be improper for us to comment upon the weight of the evidence, and we shall therefore overrule this assignment by simply saying that we have concluded that whether or not reasonable care was exercised by the appellant in guarding the property of Mrs. Moise was a question of fact for the determination of the jury.

[2] The court, after telling the jury that "a failure to use that degree of care that an ordinarily prudent person would use under the same or similar circumstances is negligence," instructed them further as follows:

"Therefore, if you find and believe that defendant was guilty of negligence as above defined in failing to properly watch and guard the property of plaintiff to protect same against theft, and you further find that said negligence, if any, was the proximate cause of the plaintiff's loss, then you will find for the plaintiff in an amount sufficient to compensate plaintiff for her loss, if any."

It is contended that the charge is on the weight of the evidence, in that, it intimates that the defendant did fail to properly watch and guard the property of the plaintiff, Mrs. Moise, to protect same against theft. The contention is well founded. Several similar charges have been held to be subject to the objection here urged, and the cases in which they were given reversed and remanded. Railway Co. v. Williams, 17 Tex. Civ. App. 675, 40 S. W. 161; Railway Company v. Waldie, 101 S. W. 517; Railway Co. v. DeBord, 132 S. W. 845; Railway Company v. Smith, 133 S. W. 482. Our statute prohibits the judge in jury trials from commenting upon the weight of the evidence, and this statute is mandatory. The appellant was entitled to have the issue involved in the charge complained of determined by the jury from a consideration of the testimony alone, uninfluenced by any intimation from the court as to the view he entertained with reference to it. The court, in framing the charge, did not intend, of course, to be understood as making such an intimation to the jury; but, as the language and form of the charge is such as to suggest that the court was of the opinion that the evidence showed a failure on the part of the appellant to properly guard the property of the plaintiff against theft, it constitutes reversible error. As was said in Railway Company v. Lynch, 136 S. W. 580:

"The vice in the instruction does not lie in the fact that the jury were relieved of the duty to determine such a question, but in the fact that they might have construed the language complained of as indicating the view the court court took of the testimony with reference to that phase of the case."

In Railway Co. v. Waldie, supra, the plaintiff, an employé, sued to recover damages for personal injuries received, while assisting in loading iron rails from one car to another, under the direction of the company's section foreman Collins, and the charge of the court, so far as here material, was as follows:

"And if you further find defendant and its foreman Collins was guilty of negligence, as that term has been hereinbefore defined, in attempting to do said work with an insufficient number of men or in failing to provide and furnish appliances or tools reasonably necessary to enable said gang to perform said work with reasonable safety, or in failing (italics ours) to notify plaintiff that said rail would be dropped, and if you further find that such negligence, if any, was the direct and proximate cause of plaintiff's injury, then, if you so find, you will find for the plaintiff and so say by your verdict, and assess his damages as hereinafter directed unless you should find for the defendant under charges hereinafter given you."

The Court of Civil Appeals of the Third District, in holding this charge erroneous, said:

"Error is addressed to this charge, because it invades the province of the jury, and assumes as a fact that there were an insufficient number of men to safely do the work, and failure by the defendant to furnish appliances and tools reasonably necessary for the performance of the work with reasonable safety. Charges similarly framed have been held subject to the objection urged and made grounds for reversal. Railway Co. v. Williams, 17 Tex. Civ. App. 675, 40 S. W. 161; Railway Co. v. Smith, 63 S. W. 1065. Having a statute which, in jury trials, prohibits the judge from commenting upon the weight of testimony, it has been repeatedly held that any act of the judge which intimates to the jury his opinion as to the weight of testimony submitted to the jury is prohibited by that statute. This may be done in many ways, as shown by repeated decisions."

In Railway Co. v. Smith, 133 S. W. 482, cited above, the court charged the jury thus:

"If you believe from the evidence that the defendant in loading the coal on the tender, or in maintaining its track at the place where such injury occurred, or in running the train at too great a speed, or in providing an insufficient number of men to keep the track in the section where such injury occurred, if it did occur, in good condition, failed to exercise ordinary care as that term is defined in this charge, and if you believe that such personal injuries to James Smith, if any, resulted in his death and from the failure of the defendant to exercise care in respect to its railway track and running its train and in loading its tender, as above stated, then and in that event you should find for the plaintiff; but, if you do not so believe, you will find for the defendant."

This charge was attacked as being upon the weight of the evidence, and the Court of Civil Appeals of the Sixth District, speaking through Mr. Justice Levy, said:

"The charge assumes that the train was being run at too great a rate of speed, and that an insufficient number of section men were provided to properly maintain the track at that section. These were sharply controverted issues in the case and material grounds of negligence pleaded and relied on. We feel constrained to hold that it was a charge upon the weight of evidence and in violation of the statute in such respect. Under repeated decisions, it is held to be reversible error, under the terms of the statute, for the court to charge at all on the weight of evidence."

In the case at bar the language of the charge objected to is as follows:

"If you find and believe from the evidence that the defendant was guilty of negligence, as above defined, in failing to properly watch and guard the property of plaintiff to protect same against theft, * * * then you will find for the plaintiff in an amount sufficient to compensate plaintiff for the loss, if any."

The purport of this charge is that, in the opinion of the trial court, the appellant failed to properly watch and guard the property of the appellee, Mrs. Moise, and in view of our statute must be held to be reversible error. This court, in the case of Railway Co. v. Williams, 17 Tex. Civ. App. 675, 40 S. W. 161, held that an instruction which from its form of expression was liable to be construed by the jury as assuming the proof of a material fact in controversy was misleading, and reversed and remanded the cause for a new trial. The fact assumed in the court's charge in the instant case was not only material, but the controlling issuable fact in the case.

[3] Appellant further contends that the charge under consideration was erroneous, in that it was, in effect, an instruction that the appellant had the duty of keeping such a watch as would necessarily prevent theft. There is force in this contention, but it is not likely that the court's charge upon another trial will be subject to such criticism. The rule is well settled that sleeping car companies are required to use only reasonable or ordinary care to guard the property of passengers on their cars from theft. That high degree of care applicable to common carriers generally does not apply. In Lewis v. Car Co., 143 Mass. 267, 9 N. E. 615, 58 Am. Rep. 135, which seems to be a leading case upon the subject, the rule is thus stated:

"While it is not liable as a common carrier or as an innholder, yet it is its duty to use reasonable care to guard the passengers from theft; and if, through want of such care, the personal effects of a passenger such as he might reasonably carry with him are stolen, the company is liable for it."

The rule enunciated is well nigh universal, and many of the cases announcing and following it will be found cited in Pullman Sleeping Car Co. v. Hatch, 30 Tex. Civ. App. 303, 70 S. W. 771.

[4, 5] There is another rule firmly established by the decisions of this state, which is invoked by appellant, and that is that ordinarily a party to a suit is entitled to an instruction applying the law to his theory of the facts as disclosed by the evidence. If this rule has not been complied with in the court's general charge, then the party who has been thus deprived of such a charge has the right to prepare and have given a special charge supplying the omission in the general charge. Railway Co. v. McGlamory, 89 Tex. 639, 35 S. W. 1058; Railway Co. v. Rogers, 91 Tex. 52, 40 S. W. 956; Pullman Co. v. Schober, 149 S. W. 236. Whether appellant exercised reasonable care to guard the appellee's property against theft was an issue in this case which it "was entitled to have * * * submitted on charges that embodied a reference to the facts or theory upon which it was based." Railway Co. v. McGlamory and Pullman Co. v. Schober, supra. The issue was submitted only in a very general manner.

[6] In the third paragraph of the court's charge the jury was instructed as follows:

"You are further charged that if you find for the plaintiff in any sum as actual damages, under the charge above, and you further find that by reason of said negligence, if any, as above defined, the plaintiff was really and necessarily caused to suffer humiliation and mental anguish, you will find for the plaintiff in any amount that you believe she has suffered thereby, not to exceed $535."

The proposition contended for under this assignment is that:

"Damages for mental anguish are not recoverable in an action for negligent loss of property in the absence of pleading and proof of intentional wrong or insulting conduct on the part of the defendant."

Appellant's able counsel have cited no case in which the precise question raised has been decided and admit that they have been unable to find such a case. It is contended, however, that the principle deducible from the decisions cited in support of their proposition is that damages for mental anguish are not a proper element of recovery in cases of breach of contract except for the delay and misdelivery of telegrams, which on their face indicate that mental distress would probably follow from such delay or misdelivery; nor in actions for tort, unless the plaintiff has sustained physical harm or has been intentionally or wantonly subjected to distress or humiliation. The question is not free from difficulty, but we have reached the conclusion that the issue sought and intended to be submitted in the charge was a proper one under the pleadings and proof. The charge, however, did not, we think, submit as specifically and clearly the very issue involved in the allegations of the appellee's petition and the evidence adduced upon that issue as it should have done. Probably the appellee was not entitled to recover for any mental distress suffered simply as a result of the loss of her property, and we do not understand that she sought any such recovery. The allegations of the petition are that, as a consequence of the negligence of the appellant, the appellee was forced to walk through a number of coaches of the train clad only in her nightgown and kimona to the baggage car in the train to secure from her trunk sufficient clothing to wear until she reached her destination, and was thereby exposed, in her scanty attire, to the gaze of the passengers on the train and caused to suffer great mental anguish, embarrassment, and annoyance. These allegations were sustained by undisputed evidence, but the record discloses no pleading nor evidence of "intentional wrong or insulting conduct on the part of the appellant." The question then is: Was the mental anguish suffered by appellee, in the manner and under the circumstances alleged and proved, a proper element of her damage if the appellant failed to exercise reasonable care to guard her wearing apparel from the depredations of thieves? It has been held by our appellate courts that injury to feel-

ings or mental suffering caused by the seizure under legal process of real or personal property, even though such property be exempt from forced sale, is not recoverable as actual damages, though it may, under some circumstances, be taken into consideration in estimating exemplary damages, and as a general rule damages for mental anguish unaccompanied by any actual physical injury are not recoverable; but in exceptional cases such damages, in the absence of any physical injury, or intentional wrong or insulting conduct on the part of appellant, have been allowed in this state. Notably among such cases are those involving delay or misdelivery of telegrams. The exception to the general rule, however, has not been restricted to cases in which there has been a failure to deliver a telegram. Railway Co. v. Anchonda, 68 S. W. 743; Id., 33 Tex. Civ. App. 24, 75 S. W. 557; Railway Co. v. Coopwood, 96 S. W. 102. In the first case cited the appellee therein purchased of the railway company's agent tickets for herself and two children, the agent looking at the children to see if they were entitled to half fare tickets, but nothing being said as to the relationship existing. When the train upon which the mother and children expected to embark arrived at the station, the two children were placed upon the train; but the train was not stopped long enough to enable the mother to board it, and her children were carried away on the train and thus separated from her. The court held that, if the railway company knew of the relationship of the mother to the children, the husband, who was suing, was entitled to recover for the mental anguish suffered by the wife as a direct result of the negligent separation of her from her children, without proof of any physical injury or intentional wrong or insulting conduct. In the second case, in which a writ of error was denied, the appellee, Mrs. Coopwood, sued the railway company to recover damages for mental anguish suffered by her as the result of the inattention, mistreatment, or neglect by the company's servants of her invalid and helpless daughter, who was traveling with her on one of the railway company's passenger trains, and the principal question in the case was whether such suffering was an element of appellee's damages. This court, after a somewhat lengthy review of the decisions of this state, held that damages by reason of such suffering were recoverable, although it did not appear that Mrs. Coopwood had sustained any physical injury, or had been intentionally or wantonly subjected to distress or humiliation. In the case at bar, if the appellant failed to exercise the degree of care imposed upon it by law to guard Mrs. Moise's wearing apparel from the theft alleged, and as a result of such failure she lost such apparel, and if as a further proximate result of such loss it became necessary for appellee to pass through the coaches of the train clad only in her nightgown and kimona to the baggage car to secure proper clothing, and suffered humiliation or mental anguish by reason thereof, then, upon the theory that such humiliation or mental anguish was the direct or proximate result of appellant's negligence, the appellant would be liable in damages therefor. That appellee, in the event of the loss of her wearing apparel by theft, would be exposed to the gaze of passengers on the train in her nightclothes and would suffer as a result thereof humiliation, or some form of mental anguish, might reasonably have been expected as the natural and probable consequence thereof can hardly be questioned.

[7] The next assignment of error is that:

"The court erred in admitting the following testimony offered by plaintiff, over defendant's objection, to wit, the testimony of plaintiff, as follows: 'I didn't know what to do. I didn't know whether I would be without clothes the next morning when I got to Chattanooga, and I was in an awful predicament, and I didn't know what to do.'"

The proposition advanced under this assignment is that:

"Damages are not recoverable for mental anxiety or fear of some contingency when the contingency never came to pass and the anxiety is unfounded."

This assignment is well taken. In the case of M., K. & T. Ry. Co. of Texas v. Linton, 126 S. W. 678, the plaintiff sued for mental anguish incident to delay by defendant in shipping the corpse of her son. The railway company failed to transport the corpse, and plaintiff testified that when the corpse did not arrive promptly she feared that the body would be in such condition that it could not be shipped at all. In fact, the body was later shipped by express, so that plaintiff's fear proved to be ill founded. On appeal to this court, it was held, in an opinion by Mr. Justice Bookhout, that:

"The fears of appellee. that it could not be shipped, but would have to be laid away in the state of Washington, and if shipped it would be in such condition she could not look upon it, were purely imaginary. Mental anguish on her part resulting from apprehension or fear that certain things would happen, which in fact did not, cannot be made a basis for the recovery of damages. Western Union Tel. Co. v. McNairy, 34 Tex. Civ. App. 389, 78 S. W. 969; Tel. Co. v. Edmonson, 91 Tex. 206, 42 S. W. 549; Tel. Co. v. Reed, 37 Tex. Civ. App. 445, 84 S. W. 296; Hart v. Tel. Co. [53 Tex. Civ. App. 275], 115 S. W. 638. The admission of this evidence was error."

Clearly, under the decisions cited, the testimony here complained of was inadmissible.

The judgment is reversed, and the cause remanded.