PULLMAN CO. v. FRANKS et al.
(No. 7195.)

(Court of Civil Appeals of Texas. Galveston. June 8, 1916.)

1. CARRIERS  417—PASSENGERS—SLEEPING CARS—ACTION FOR LOSS OF PASSENGER'S EFFECTS—EVIDENCE.

In action against sleeping car company for loss of passenger's money by theft of porter or failure to keep watch over it, evidence that the money was lost and that the porter had opportunity to take it, there being others in the car with equal opportunity, *held* not to raise an issue of theft by porter.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig.  417.]

2. CARRIERS  417—PASSENGERS—SLEEPING CARS — ACTION FOR LOSS OF PASSENGER'S EFFECTS—EVIDENCE—INSTRUCTIONS.

In such action, it was error to submit the issue of porter's theft to jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1590–1600; Dec. Dig.  417.]

3. APPEAL AND ERROR  1062(1)—HARMLESS ERROR.

In such action, where the evidence tending to show negligence on the part of the company in failing to keep watch was extremely meager, the erroneous submission of the issue of theft by the porter *held* reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212; Dec. Dig.  1062(1).]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by Mrs. Chas. T. Franks and another against the Pullman Company. From a verdict for plaintiffs, defendant appeals. Reversed and remanded.

Andrews, Streetman, Burns & Logue, R. H. Kelley, and M. E. Kurth, all of Houston, for appellant. Gill, Jones & Tyler and Hugh Potter, all of Houston, for appellees.

PLEASANTS, C. J. This suit was brought against appellant by appellee Mrs. Franks, joined by her husband, to recover the sum of $230 which she alleged was stolen from her while she was a passenger occupying a berth in one of appellant's sleeping cars. The petition charges, first, that said money was stolen from plaintiff's berth in said car by a servant of appellant who was employed as porter on said car. It then charges in the alternative:

That, "if the said porter did not purloin the said $230, the defendant and its servants failed to keep such watch during the night of June 30, 1913, as it is its and their duty to keep and as would prevent the loss of said property belonging to the plaintiff, a passenger in said car of defendant. That the defendant, the Pullman Company, and its employés, failed to use reasonable care to protect the plaintiff herein from theft of her personal property, either in having in its employ a porter who purloined the same, or in failing to keep such watch during the night of June 30, 1913, as would reasonably well protect the plaintiff from loss of her property carried into the defendant's car."

The defendant answered by general demurrer and general denial. It also pleaded specially that the money lost by Mrs. Franks was greatly in excess of a reasonable sum for traveling expenses, and was therefore not properly carried by her as baggage, and defendant was under no obligation to protect and guard it. Defendant further pleaded contributory neligence on the part of plaintiff in failing to put her money in a safe place in her berth. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs for the sum claimed by them.

Mrs. Frank was the only witness who testified in the case. After stating that the train on which she made the trip from Chicago to Houston left Chicago about 12 o'clock at night, she testified as follows:

"I had lower berth No. 4, but do not remember the number of the car. It was, however, the car from Chicago to Houston on the Chicago & Alton train; I remember that. When I walked up to the sleeper on the outside, I did not see any one connected with the Pullman Company except the porter. When I got on the car, he followed me in with my grip to the berth. After I got on, I did not do anything but put my grip in my berth, and he (the porter) stood by the side of the berth all the time. After I put my grip in the berth, I went to the washroom, and when I came back I asked the porter for a glass to get a drink of water, and he gave me my cup, and I went back and got a drink. I came back again and asked him if he was going to Houston, and he said, 'Yes,' he was going right through, and I went back to the toilet again to prepare to retire, and he was still standing outside of my berth all the time, and I retired a little after 1 o'clock. During all the time that I was making the several trips to the toilet and back I had the $230 on my person, and I did not take it off my person until after I had gone to bed in the berth. When I went to bed, I took the $230 out of my purse, and I took a handkerchief and folded the $230 and put it inside the purse. Yes, that is my purse. I put it right in that compartment. I had those two articles in the compartment at the time, and I found them outside my berth in the morning. After I put the money in the bag, I closed it up,

like this, and put it away between the foot and head of the berth on the side toward the window. That made the purse between me and the window of the sleeping car, on top of the cover. I had the sheet pulled up over me. When I retired, I closed the curtains at the middle and at the bottom, but not at the top. The reason I did not close them at the top was that it was rather a warm night. The windows were up a little, but both of them had a screen. From the time I first got on the Pullman car until I got in my berth I did not see any one except the Pullman porter in that car. Each time I started to the toilet and came back I noticed the porter right outside my berth. He was not doing anything because both of these berths were not occupied. He was not opening the windows, nor attending to any of his other duties. He was not making up any of the berths, but just standing there all the time.

"After I went to sleep that night, I woke up about half past 3 in the morning and looked at my watch, and it was not time to get up, so I dozed off again. I was not sleepy. Consequently, about 6:10 or 6:15 I got up and went to the washroom, and on getting out of my berth saw the porter standing at the other berth down below, and he looked at me right hard. As soon as I discovered that the $230 was not where I put it, I reported my loss to the porter. He said that it was very funny, that there was nobody around but him, and that he had seen no one; and I told him to go and get the two conductors, and I reported my loss, and they told me that they were very sorry. The porter kept walking around and making up the berths, and I watched him continuously. When I advised the porter that I had lost this money, he didn't do anything, just kept on working around the berths. Neither of the Pullman conductors did anything. Neither one of them made any effort to find my money, but told me I could not do anything until I got to Houston and talked to my husband."

"When I got up in the morning about 6:30 and went to the toilet and discovered the loss of the $230, I didn't notice any one at that time except the porter. The berths on the back of me were made down, but the ones next to the corner were not made down. Neither was the berth directly opposite me made up, nor the one in the next corner was not made up.

"I found two little trinkets which I had along with me outside of my berth in the morning when I noticed that my money was gone; that was when I first got up and came back from the washroom. They were right in front of my berth on the floor. When I found these little trinkets on the floor, I spoke to the porter about it. I asked him if he knew anything about it. He said he did not, but that he noticed that on the floor early in the morning. The Pullman porter showed me all of Mrs. Fox's jewelry which he said she had given him the night before, and he told me if he had been given my money it would have been perfectly safe with him, but I didn't say anything further to him.

"At Palestine I had my breakfast outside and went back to the Pullman car. The conductor and porter were searching Mr. and Mrs. Fox's grips for a mesh bag that she had lost. They were looking for the mesh bag, and they had taken her berth to pieces again and had made it up and looked all through her bag, and I asked the conductor what they were looking for, and he told me that she (Mrs. Fox) had lost her mesh bag, and didn't know whether she had lost it the night before, or after she had gone to breakfast. They didn't find that mesh bag, so far as I know. With reference to this particular transaction, I spoke to the Pullman conductor, and he told me that he would not trust any of the porters; he told me there were some detectives on the train."

On cross-examination Mrs. Franks testified as follows:

"Yes, I did say that I didn't close the curtains at the very top when I went to bed on account of the heat, but I could not see out into the aisle through the curtains. The big heavy curtains were open at the top, but closed at the bottom. The screens have a sort of catch on them on the inside, and the screens were in the same position when I awoke as they were when I went to bed. I don't think there was any opportunity for anybody to reach into my berth from the outside and get that purse; I mean from the outside of the car. I had opened my bag and I gave him a tip, but this $230 was entirely on my person at that time, and not in my bag. The Pullman porter nor anybody else could have known that the $230 was in the bag, unless they watched me put it there after I got in my berth. My curtain was closed, but there was plenty of room, as the next berth was not made. From about 3:30, the time I looked at my watch, until I got up, I dozed very little. I don't think there would have been any opportunity during that time for anybody to get into my purse without me being aware of it.

"Yes, it reduces itself to the proposition that the money must have been taken out of my bag between the time I went to sleep and the time I woke up about 3:30.

"From the little diagram which Mr. Potter has prepared, and which I now examine, I can indicate what berths were made, and which were unmade. Nos. 1, 2, and 3 were unmade, and so far as I remember, with that exception, all the other berths were made down.

"From the time I stepped on that Pullman car until the time I awoke in the morning at 6:30 and went to the toilet and found my money gone, I did not see any one around my berth in that car except the Pullman porter.

"When I got up in the morning at about 6:30 and went to the toilet and discovered the loss of the $230, I did not notice any one at that time except the porter. Later on, when the people began to get up, I noticed that there were other people in the car; I suppose the car was pretty near full. The berths on the back of me were made down, but the ones next to the corner were not made down, neither was the berth directly opposite me made up, nor the one in the next corner was not made up. There were three of the berths not made up."

Under an appropriate assignment of error, appellant complains of the following paragraph of the court's charge:

"If you should believe from a preponderance of the evidence that the porter on the car in which the plaintiff was sleeping (if she was so sleeping) purloined any of plaintiff's money, which she was then and there entitled to carry as 'baggage,' then in this event you will find for plaintiff in the amount of such money purloined, if any, and this is true even though you may believe that the plaintiff was guilty of negligence."

This complaint is based upon the proposition that the evidence does not raise the issue of the theft of Mrs. Franks' money by the porter, and therefore that issue ought not to have been submitted to the jury.

[1, 2] We think the assignment should be sustained. We have set out above all of the testimony bearing upon this issue and do not think the facts and circumstances shown by this testimony can be regarded as any evidence that Mrs. Franks' money was stolen by the porter. All that the testimony shows is that the money was lost and that the porter had the opportunity to take it. There

was nothing in his acts or statements to show that he was guilty of the theft. The testimony shows that there were a number of other persons in the car during the night whose opportunity to commit the theft was equal to that of the porter. There is no testimony as to the number of persons in the car when Mrs. Franks retired to her berth, and no testimony as to whether any passengers came in or left the car during the night. The testimony hardly justifies a surmise or suspicion that the porter stole the money, and certainly does not do more, and cannot be regarded as sufficient evidence to raise the issue of theft by the porter. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Pullman Co. v. Hatch, 30 Tex. Civ. App. 303, 70 S. W. 771.

[3] The evidence tending to show negligence on the part of appellant in failing to protect Mrs. Franks from having her money stolen, if sufficient to raise that issue, is extremely meager. In this state of the evidence, the submission of the issue of theft of the money by the porter, when such issue was not raised by the evidence, cannot be regarded as immaterial error, but is one which requires that the judgment be reversed and the cause remanded, and it has been so ordered.

Reversed and remanded.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes